Lee, J.
There is confessedly some obscurity and confusion in the law upon the subject of confessions in criminal cases. The dicta of the English judges in many cases will be found wholly irreconcilable, and some of their reported decisions at nisi prius directly conflicting. Another difficulty in arriving at correct results arises from the fact that those judges, in delivering their opinions, have sometimes used language broad enough to cover other cases marked by very different circumstances, although no doubt intended by them to be construed and understood with reference to the subject matter—the case in hand—of which they were treating. And the elementary writers, in giving the rules which they supposed to be fairly deducible from those opinions, have sometimes laid them down much too broadly by failing to advert to the restrictions imposed by the circumstances of the particular case. The dicta of judges at nisi prius are also frequently cited as authorities without reference to their agreement or disagreement with adjudicated cases, and the decisions are given in a form so concise *736 and with a statement of the facts upon which they were pronounced so meagre and imperfect, that they can be entitled to little weight as authority. The rules too which are given by those writers, being deduced from dicta and decisions which cannot be reconciled among themselves, will be found to be in some instances directly conflicting.
. Of this conflict of opinion among the English judges, repeated instances are to be met with in the reported cases, and some of them will be hereafter more particularly adverted to. Even with regard to the weight and degree of credit which a jury should attach to a confession of a party accused of crime, much difference of opinion has existed. In Warickshalls Case, 1 Leach 298, it is declared that a free and voluntary confession is deserving of the highest degree of credit, as flowing from the highest sense of guilt. So in Lambe’s Case, 2 Leach 625, it is stated as the opinion of the judges, that it constitutes the highest and most satisfactory evidence of guilt. Chief Baron Gilbert says, that a voluntary confession is reckoned the best evidence; Gilb. Ev. 123; and such is the opinion of Erie, justice, expressed in Baldry’s Case, 2 Denison’s C. C. 430. On the other hand, Justice Foster regards hasty confessions as the weakest and most suspicious of all kinds of evidence. Foster’s Crown Law 243. And of this opinion is Sir William Blackstone. 4 Bl. Com. 357. In Simon’s Case, 6 Carr. & Payne 541, Alderson, baron, speaking of the admission of the party, says that it showed how little reliance was to be placed on evidence of that character. And in a note to the case of Earle et ux. v. Picken, 5 Carr. & Payne 542, Parke, justice, is reported to have remarked upon several different occasions upon his circuit, that too much weight ought not to be attached to evidence of this kind. A similar diversity of opinion will be found to have existed among the judges in this country. *737 Perhaps no general proposition can be predicated concerning the weight and degree of credit to be given to a confession; because this must depend in every case upon the age, character and mental capacity of the party, and the share of education which he has enjoyed, and all the surrounding circumstances which attended it. And this seems to be the opinion of a learned writer on the law of evidence. 1 Greenl. Ev. § 215.
Whatever may be the degree of credit due to it, the/ confession of a party charged with a criminal offencej is admissible testimony against him, being received: upon the presumption that no one will make a state-»: ment contrary to his own interest if it be untrue. 1 Phil. Ev. 110. Hence when the circumstances are such as to overthrow that presumption and to leave it uncertain whether the statement be true or false, the law deems it better that it should be withdrawn from the jury, and the confession will accordingly be rejected. Per Campbell, C. J. and Pollock, C. B. Baldry’s Case, 2 Denison’s C. C. 430. It is therefore declared as the condition of the admissibility of a confession, that it be free and voluntary, and not made under the influence of such a bias upon the mind of the party as will in the judgment of the law, disturb the free exercise of volition, and destroy the presumption that the confession so made is true: And this, the judge and not the jury, is to determine.
What shall be said to constitute such an influence or bias on the mind as will serve to repel the presumption that the confession is true, and thus exclude it from the jury, has given occasion to much discussion and various opinions on the numerous cases reported in the books. And it must be confessed that in settling the doctrine upon this subject, rules of a highly artificial and somewhat arbitrary character have been applied by the courts. It may well be ques- *738 tinned whether, if' the matter were res integra, it would not be better (as is the practice in Scotland, see Alison’s Crim. Law of Scot. 581, 582,) to suffer the whole to go to the jury to be weighed by them, and such degree of credit to be given to it as they shall deem it. entitled to when.considered in connection with the surrounding circumstances. My own experience, I confess, has not inculcated that distrust of the competency of juries to make proper discriminations which would seem to be implied in some of the rules which have prevailed upon this subject. Or, if it be determined that it is the province of the judge to say whether the confession is of such character as to be admissible as evidence, it may be doubted if it would not be better to permit him to decide the question uptra his own view of all the circumstances, comprehending the nature of the confession itself, the character and condition of the party making it, and of him to whom it is made, and the time, place and manner in which it was so made, untrammeled by the artificial rules which have been established for his government. It has, however, been so long and firmly settled that the judge is to pass on the admissibility of the confession, and to be governed by certain prescribed principles in forming his judgment, that it is a matter now no longer to be drawn in question or disturbed ; and we must abide by the doctrine as it is settled.
It has, however, been justly remarked that the decisions excluding confessions have gone to a length neither required by justice nor warranted in reason or by sound policy. And this has been alluded to by learned judges in terms of regret and complaint. Parke, justice, has said “ that the doctrine of inducements (under the supposed influence of which the confessions were regarded as having been made) has been carried to the verge of common sense.” See cita *739 fion 1 Phil. Ev. 424, 8th ed. in note. In Baldry's Case 2 Denison’s C. C. 430, Erle, justice, says, “ According to my judgment, in many cases where confessions have been excluded, justice and eommon sense have been sacrificed not at the shrine of mercy, but at the shrine of guilt.” And in the same case, at p. 445, Parke, baron, in speaking of the inducements that had been held sufficient to vitiate confession, says, “The decisions to that effect have gone a long way.”—“ I think there has been too much tenderness towards prisoners in this matter. I confess that I cannot look at the decisions without some shame when I consider what objections have prevailed to prevent.the reception of confessions in evidence ; and I agree with the observation of Mr. Pitt Taylor, that the rule has been extended quite too far, and that justice and common sense have too frequently been sacrificed at the shrine of merey.” See also 1 Greenl. Ev. § 219. And in the more recent cases the. judges, have plainly, manifested a disposition' not only not to carry the doctrine any further, but also to some extent to retrace their steps, and to adhere more closely to the proper discrimination to be made between the different kinds of inducements that may be supposed to have led to a confession, and the characters of the parties by whom the same may appear to have been held out.
The rule that may be fairly deduced from authoritative decisions upon the subject is, that a confession may be given in evidence unless it appear that it was obtained from the party by some inducement of a worldly or temporal character in the nature of a threat, or promise of benefit, held out to him in respect of his eseape from the consequences of the offence or the mitigation of the punishment, by a person in authority, or with the apparent sanction of such a person.
The inducement must relate to temporal or worldly *740 advantage as contradistinguished from exhoi’tation or persuasion to confess with a view to spiritual benefit. Gilham’s Case, 1 Mood. C. C. 186; Sarah Nute’s Case, 1 Burn’s justice 688, and cited 2 Russ. 832; Gibney’s Case, cited Joy on Confessions, 57. And it must have been held out by or with the apparent sanction of some person holding such a relation to the party accused, or the offence, or the prosecution, as shall cast upon him the character of a person “in authority” in the matter.
It is true, authority is to be found both in elementary treatises and in the reported dicta of judges, for the proposition that a confession can never be received in evidence where the party has been influenced by any threat or promise, without regard to the person by whom the threat or promise was made. The law is so stated broadly in 2 Stark. Ev. 48, (third Am. ed. 1830;) and for authorities, he refers to Warickshall’s Case, 1 Leach’s C. C. 298; Rudd’s Case, 1 Cowper’s R. 331, S. C. 1 Leach 115; and 2 Hawk. ch. 46, § 34, p. 595. But in Warickshall’s Case, the promises which were supposed to have induced the confession, were made by the prosecutor who, it is agreed on all hands, is a person in authority within the meaning of the rule; and what is said by the court must be understood with reference to the actual case. In Rudd’s Case a motion was mad'e to admit the defendant to bail upon the ground of her having been received and examined as king’s evidence by three magistrates who were acting as such in the matter, and were therefore persons in authority, and to whom she had, as alleged, made a disclosure of everything she knew under the faith and confidence reposed in them, and taking it for granted they were fully acquainted with the duty of their office: And the remarks of Lord Mansfield are to be understood with reference to the case then before him. The passage cited from Hawkins is shown not *741 to have been any part of the text of Hawkins, but to have been introduced into the margin of some of the later editions. In Gilbert’s Evidence, at p. 137, the same passage is to be found. But in Gilham's Case, 1 Moody C. C. 186, Parke, justice, remarked, that the passage does not appear to be by C. B. Gilbert; and that it was probably inserted by the editor Lofft. And in a note it is stated that in the early editions of Gilbert the passage certainly does not appear, and that the editor probably took it from the margin of the eighth edition of Hawkins. It is added that the Old Bailey Papers 1786, are referred to, but upon examination of them the passage in terms is not to be found. See Joy on Confessions, p. 31.
So in the case of The King v. Spencer and another, 7 Car. & Payne 776, Parke, baron, said there was a difference of opinion among the judges whether a confession made to a person who has no authority, after an inducement held out by that person, is receivable, though he said he would receive it in that case and reserve the point. In Dunn's Case, 4 Car. & Payne 543, and in Slaughter's Case, reported in a note to the former, it was held by Bosanquet, justice, that any person telling a prisoner that it will be better for him to confess will always exclude any confession made to that person. In Kingston's Case, 4 Car. & Payne 387, a confession made to a surgeon who had told the prisoner she had better tell all she knew, was excluded. And this doctrine would seem to be supported by Walkley's Case, 6 Car. & Payne 175; Clewes' Case, 4 Car. & Payne 221; Thomas' Case, 6 Ibid. 353; Knapp's Case, 9 Pick. R. 496; and Guild's Case, 5 Halst. 163.
But in Row's Case, Russ. & Ry. C. C. 153, where the confession was induced by the advice of some of the prisoner’s neighbors given in presence of the constable who had the prisoner in custody, but who at the time made no remark thereon, it was held by the nine *742 judges who were present, that the evidence was admissible and the conviction right, because the advice to confess was not given or sanctioned by any person who had any concern in the business; the.persons who had given it having nothing to do with the apprehension, prosecution or examination of the prisoner. In Taylor's Case, 8 Car. & Payne 733, Patteson, J. said it was the opinion of the judges that a confession was admissible, unless there had been some. inducement held out by some person in' authority. The cases of Rex v. Gibbons, 1 Car. & Payne 97; Same v. Tyler & Finch, Ibid. 129; Same v. Hardwick, cited in a note to Gibbon's Case, and in 6 Peters Abr. 84, and Same v. Lingate, Ibid, are to the same effect. And in the recent case of Regina v. Moore, 2 Denison’s C. C. 527, it is declared in the judgment of the court, (eight judges being present,) that a confession is clearly admissible, though obtained by threats or inducements, if such threats or inducements were held out by a person not in authority.
This, I take it, is now the well settled rule in England. I think it wise and salutary, and that it should be adhered to here. A different rule would cut off a most important, and in many instances, the only source of evidence by which the conviction and punishment of guilt can be secured. Nor do I apprehend that a party accused will be subjected to undue peril by its observance. The cases must be extremely rare in which parties under any influence whatever, will confess themselves guilty of crimes of which they are in fact innocent; although certainly there are a few such cases reported as having heretofore occurred in the annals of criminal jurisprudence. And it is for the jury to weigh the confession as well as all the other evidence in the cause, and to give to it exactly that degree of credit to which it is entitled, and no more : and that juries can perform this duty, impartially and *743 disci'eetly, my experience and observation have not led me to entertain any serious doubts.
' In the case before us, inducements were held out to the prisoner to make confession; and those inducements were of the character contemplated by the rule. And he was a free negro and the apprentice by indenture of the witness to whom the confession was made, and it happened also that the master was a magistrate of-the county in which he and the prisoner resided.' And it is urged that by reason of his charac-/ ter of master, or of magistrate, or both, the witness was a person in authority within the meaning of rule upon that subject.
In some of the elementary treatises on this subject it would seem to be stated broadly that the master or mistress oh a prisoner- is a' person in authority within the meaning of the rule, in virtue of that character. Joy on Confessions, p. 5; 1 Pitt Taylor’s Ev. 587. In Roscoe’s Ev. p. 43, it is not stated so broadly. The author, in illustrating who are meant by persons in authority, mentions the prosecutor, constable, &c. In 1 Greenleaf’s Ev. § 222, the author illustrates by the prosecutor or his wife, the prisoner being his servant, thus referring to the cases in which the confessions were excluded not simply, because the inducements were held out by the prisoner’s master or mistress, but because the master was also prosecutor. In 2 Russ, on Crimes, the author, describing those whose inducements would exclude a confession, says, “It wouldj seem that all who are engaged in the apprehension, prosecution or examination of a prisoner,” are considered persons in authority within the meaning the rule. He then proceeds to give numerous illustrations, and among the rest enumerates “the master or mistress to a servant.” Whether he means that being such master or mistress sufficed of itself to constitute the party such person in authority, or that he *744 or she should be in some way engaged in the apprehension, prosecution or examination of the prisoner, is left somewhat uncertain. But upon examining the various cases in which the master or mistress has been held to be a person in authority, it will be found that in them all the offence in some way concerned the master or mistress, and that they were connected with the matter itself. Thus in Upchurch's Case, 1 Moody’s C. C. 465, the prisoner was a domestic servant to the prosecutor who kept a beer-house. The prosecutor’s wife lived with him and took her share in the management of the house, and it was by her the inducements to confess were held out. In Sarah Taylor's Case, 8 Car. and Payne 733, the offence was setting fire to the prosecutor’s house, the prisoner being his servant; and the inducements to confess were held out in the presence of the wife of the prosecutor and owner of the house, who expressing no dissent, was therefore regarded as sanctioning the inducement. Simpson's Case, 1 Moody’s C. C. 410, is to the same effect. In Warringham’s Case, the offence was stealing from a shop; and the confession was induced by what was said by the mistress of the prisoner, who, it appeared, was the habit of managing the shop. 2 Denison’s C. C. 447, in note. In Parratt’s Case, 4 Carr, and Payne, 570, the prisoner was a mariner, and was charged with having stolen a watch from a shipmate while on board their vessel, the watch having been found concealed in the cable. The captain of the ship threatened to commit him to jail immediately upon their arrival at New Castle, unless he would confess who his partner was, and the prisoner accordingly did make a confession. Here the felony was committed on board the vessel of which the party holding out the inducements was the master, and he had the right to arrest the prisoner and commit him to jail on reasonable suspicion that he was the guilty party. In Carrington's Case, *745 and Howell's Case, cited by Parke, baron, in delivering the opinion of the judges in Moore's Case, 2 Denison’s C. C. 522, the same or a similar distinctive feature, we are told, will be found to exist. And in none of the cases which I have been able to find upon the subject, has the simple relation of master or mistress to party making a confession under inducements, per se and unconnected with any other circumstance creating an interest or concern in the matter, been held sufficient to exclude the confession as made to a person in authority, within the meaning of the rule.
In the recent case of The Queen v. Moore, 2 Denison’s C. C. 522, decided in 1852, the precise question arose as to the admissibility of a confession made to the prisoner’s mistress, under inducements held out by her, the offence being unconnected with the person or property or dwelling-house of the master or mistress. The charge was infanticide, and the prisoner, under inducements held out by her mistress, had made a confession which was offered in evidence against her. Objection was made, but it was received by the court: and the prisoner (though acquitted of the murder) having been found guilty of the misdemeanor of concealing the birth of her child, the case was reserved for the consideration of the judges. The case was elaborately argued for the prisoner, and seems to have been very deliberately considered by the court. It was admitted by the counsel in argument, that in none of the cases where the inducement had been held to exclude the confession, was the offence unconnected with the person or property or dwelling-house of the master and mistress, as in the case before the court; but it was urged that for an offence of that character, committed in their house, no one would be more likely to interfere and become prosecutor than the master and mistress; for that if it were hushed up and they had been parties to the concealment of the offence, *746 they would have subjected themselves to the charge ™sPrisi°n of felony. It was also insisted that it in the proper department of the wife to look after the morals of her female servants : that no one has so much authority over* the mind of a maid servant as her mistress, and that the mistress, qua mistress should be said to be a person in authority. The argument, however, did not prevail; the court (eight judges present,) held that it was only where the offence concerned the master or mistress that their holding out the threat or promise renders the confession inadmissible : and it was accordingly held that the evidence was properly received and the conviction right.
This case I regard, as settling the rule in England, and I see no good reason for departing from it here.
I do not think the circumstance that the master happened to be a justice of the peace or magistrate of the county, should make any difference under the circumstances. of this case. It cannot be doubted that the cases in which confessions have been excluded because of inducements held out. by magistrates, were where such magistrates were in some way concerned in the arrest or examination of the party or otherwise connected with the prosecution,, and where their official character was recognized and appreciated by him in connection with the matter. Such is the plain sense and reason of. the rule, and none of the cases which I have found favors a different idea excepting possibly Clewe’s Case, 4 Car. & Payne 221. And in that case, the interview had by the witness with the prisoner took place in his character of magistrate and clergyman, and his magisterial character was made known to the prisoner and recognized by him. But no question was made on this point, the counsel for the prosecution being content to rely upon a subsequent warning given to the prisoner that no mercy could be shown him, as sufficient to put an end to any *747 hopes which he might have conceived founded upon what had previously passed between him and the witness : And the evidence was accordingly admitted. (Here the witness Edmonson was taking no part in the arrest or examination-of the prisoner, nor was he in any way concerned in the prosecution. The offence was not committed upon his premises, nor did it affect him or his rights of property in any way. He was not at all likely to become prosecutor, but to retain the services of his apprentice, might more probably be disposed to aid in his defence. It was in his character of master and a friend that he was recognized by the prisoner, and no allusion whatever was made to his magisterial character, nor was it so far as appears, at all present to the mind of the prisoner at the time. In fact it is not stated that the prisoner knew he was a magistrate.
I am by no means insensible to the force of the argument which has been so strenuously urged by the counsel for the plaintiff in error, founded upon the status of the prisoner, the extreme ignorance and dependence of that class upon those by whom they are held in service, and the actual state of terror and alarm into which the prisoner was thrown by the intelligence that his guilt had been discovered. With regard to this last mentioned matter, it might be enough to say that the bill of exceptions taken on the second trial, which is the subject of consideration here, does not state the appearance and condition of the prisoner at the time the confession was made, and that we are not at liberty to supply any facts by reference to the bill of exceptions taken on the first trial. But without placing too much stress on this, I think it is a sufficient answer to say that the evidence goes to the jury subject to observation by the prisoner’s counsel upon any and every circumstance which may serve to impair its weight or the degree of credit to which it is *748 entitled, and that the jury may disregard it altogether if they shall think the circumstances are such as to deprive it of all weight; but no different rule as to its admissibility can be applied having reference to this particular class of persons without departure on the part of the court from its legitimate province, and an assumption of the power of making law as well as of expounding it.
I think that the Circuit court did. not err in admitting the confession made to the witness Edmonson to go in evidence to the jury, and that the sentence of death passed on the prisoner should be affirmed.
Allen and Samuels, Js. concurred in the opinion of Lee, J.
Daniel and Moncure, Js. dissented.
Judgment affirmed.